UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KERRY KRAUSE, as next friend of
CHRISTIAN KRAUSE,

       Plaintiff,

                               Case No. 1:13-cv-00693-PJG

v.

                               Hon. Phillip J. Green

UNITED STATES OF AMERICA,

       Defendant.

_____/

## OPINION

This action arose from a July 16, 2011, accident in which then thirteen-year-old plaintiff Christian Krause was injured while riding his bicycle.[1]  He suffered relatively minor injuries to his chest that ultimately left him with two scars, each approximately the size of a dime.  His medical and economic damages were paid through a first-party settlement with an insurance company.

In this case, plaintiff seeks only non-economic damages from the United States under the Federal Tort Claims Act (FTCA).  The government contends that plaintiff's claims are barred by Michigan's no-fault insurance law, as he cannot establish that his chest scars rise to the level of either "serious impairment of a bodily function" or "permanent serious disfigurement."

---

[1]Christian Krause is a minor.  This action was brought by his mother, Kerry Krause, as next friend.  (Complaint, Dkt. 1, Page ID 1).  This opinion will refer to Christian Krause as plaintiff.

Pending before the Court is the United States' motion for summary judgment. (Dkt. 64). The Court held oral argument. (Minutes, Dkt. 74). Having considered the parties' oral and written submissions, and for the reasons set forth herein, the Court will grant defendant's motion for summary judgment.

## Applicable Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Sadie v. City of Cleveland*, 718 F.3d 596, 599 (6th Cir. 2013). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot genuinely be disputed must support the assertion as specified in Federal Rule of Civil Procedure 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the respondent assumes the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the respondent may not rest on the mere allegations of his pleadings, but rather, must

present "specific facts showing there is a genuine issue for trial." *El-Seblani v. IndyMac Mortg. Servs.*, 510 Fed. Appx. 425, 427 (6th Cir. 2013). "In other words, the movant [can] challenge the opposing party to 'put up or shut up' on a critical issue. After being afforded sufficient time for discovery . . . if the respondent [does] not 'put up,' summary judgment is proper." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [respondent].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Davis v. Cintas Corp.*, 717 F.3d 476, 491 (6th Cir. 2013).

Upon the respondent's failure "to properly support an assertion of fact," or "to properly address another party's assertion of fact," the court may consider the fact undisputed for purposes of the motion. FED. R. CIV. P. 56(e)(2). The court may grant summary judgment "if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3).

## Findings of Fact

The following facts are either beyond genuine dispute or are treated as true. The Court is giving plaintiff the benefit of every reasonable inference.

Plaintiff was involved in a collision with a postal vehicle on July 16, 2011, while riding his bicycle in Benton Harbor, Michigan. (Krause Dep. at 16-17, Dkt. 65-1, Page ID 533-34). He was thirteen years old at the time. (*Id.* at 4, Page ID 530). Plaintiff suffered "a minor scrape on his left arm and a couple of small abrasions on his chest";

the injuries resulted from his impact with one of the postal vehicle's exterior mirrors. (Dkt. 65-2, Page ID 557; Krause Dep. at 19, Page ID 534).

Plaintiff was taken to the hospital, where he was treated for a sprained finger and scrapes on his arm and chest. (Krause Dep. at 26-29, Page ID 535-36). The Emergency Department of the hospital described plaintiff's chest injury as a "contusion" that did not require hospitalization. (Dkt. 65-5, Page ID 573). The contusion healed a month later into "a 2 x 3 x 3 mm raised scar tissue" without evidence of surrounding cellulitis or drainage. (Dkt. 66-1, Page ID 586). A surgical specialist opined that the scars represented a "keloid formation." (*Id.*). The specialist advised against surgery at that time and, instead, advised plaintiff's mother to apply "cocoa butter or one of the over-the-counter scar creams to possibly decrease the symptoms and aid in healing." (*Id.*).

Several months later, an excisional biopsy was performed. (Dkt. 66-2, Page ID 588). Thereafter, the scars developed into two scars in the middle of his chest. (Krause Dep. at 59-60, Page ID 542). Plaintiff reported that the surgical procedure was painful, but once the skin healed over there was simply a "little discomfort" and itchiness. (*Id.* at 46-47, Page ID 539). Photographs of plaintiff's two chest scars were taken sometime after the surgical procedure. (Dkt. 66-3, Page ID 590-93).

Eight months after the surgical procedure, plaintiff sought treatment from Jennifer Williford, a certified physician's assistant who practices in the area of dermatology, to reduce the appearance of the chest scars. (Krause Dep. at 47-48, Page ID 539; Williford Dep. at 5-8, Dkt. 66-4, Page ID 596). He received Kenalog injections

– a steroid injected intralesionally to flatten and soften a scar – a number of times between June 18, 2012, and May 22, 2013. (Williford Dep. at 13, 19, 25-26, 40-48, Page ID 598-99, 601-04; Dkt. 66-5, Page ID 610-28). By October 24, 2012, Ms. Williford observed that plaintiff's scars had "flattened out very nicely," but she noted the possibility of a recurrence of the scars, which might require additional injections. (Dkt. 67-1, Page ID 631). Following the final injection, plaintiff's scars were "flat to the skin." (Williford Dep. at 58, Page ID 607). Ms. Williford directed plaintiff to contact her if the scars became itchy or swollen; he has not done so. (Krause Dep. at 66, Page ID 544; Williford Dep. at 48-49, Page ID 604-05). Plaintiff estimated that his scars are currently the size of a dime. (Krause Dep. at 40, Page ID 537).

Plaintiff found the use of the needle in the Kenalog injections painful. (*Id.* at 48, Page ID 539). Each time, he experienced one to five pokes of the needle, with three being the average. (*Id.* at 49, Page ID 540). Plaintiff stated that, for a couple of weeks after each Kenalog injection session, he experienced difficulty lifting heavy items. (*Id.*).

Ms. Williford testified that, in thirteen years of practice, she had never heard of a patient reporting continuing pain or tenderness at the Kenalog injection site, the only exception being a report from plaintiff's mother regarding plaintiff's pain. (Williford Dep. at 5, 20-21, Page ID 596, 599-600). Ms. Williford noted that, while plaintiff would "wince a little bit" at the time of the injection, he never reported to her having experienced any continuing pain after the fact. (*Id.* at 21, Page ID 600). Ms. Williford testified that she knows of no reason for such continuing pain or tenderness. (*Id.* at 20, Page ID 599). In Ms. Williford's opinion, there is no medical or physical basis for

believing that Kenalog injections could affect plaintiff's ability to work or engage in any life activities. (*Id.* at 50, Page ID 605). She placed no restrictions on plaintiff's activities of daily living, and she declined to provide him a disability certificate. (*Id.* at 49-51, Page ID 605; Dkt. 67-3, Page ID 640).

Plaintiff does not claim to have suffered any adverse effects of the Kenalog injections, other than the temporary period of pain and tenderness following the injection procedures. (Krause Dep. at 52, 67-68, Page ID 540, 544). Plaintiff reports that there are no restrictions in his life as a result of the accident, and that the only change the scars have made to his life is that he feels the need to wear a shirt to cover them. (*Id.* at 68, 77, Page ID 544-45).

Plaintiff remained physically active after the accident. He ran track in eighth grade (2011-2012 school year), spraining his ankle in September 2011. (*Id.* at 6-7, 90-91, Page ID 531, 547). He competed in shot put in 2013. (*Id.* at 91-92, Page ID 547). He suffered a contusion on his leg while playing on playground equipment. (*Id.* at 92, Page ID 547). Plaintiff reported exercising at least three days a week, and that his hobbies included swimming. (*Id.* at 92-94, 100, Page ID 547-49).

## Discussion

Plaintiff settled a first-party claim with Esurance Insurance Company, which under Michigan law, included "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation;" any lost income for up to three years after the accident; and expenses up to $20.00 per day for replacement services up to three years after the

accident. MICH. COMP. LAWS § 500.3107(1). Those damages could only be recovered against the insurer, not an alleged individual tortfeasor. *See* MICH. COMP. LAWS §§ 500.3105 & 500.3107.

Plaintiff is suing the United States in this case for negligence under the FTCA. He claims the government is liable for pain and suffering he incurred as a result of his collision with a Postal vehicle. He alleges that he suffered these non-economic damages as a result of two scars on his chest, each approximately the size of a dime.

The FTCA provides federal courts with jurisdiction to hear a claim for personal injury "caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see* 28 U.S.C. § 2674. The accident occurred in Benton Harbor, Michigan. Accordingly, the Court must look to Michigan law.

Michigan has created a no-fault insurance regime that significantly limits an individual's tort liability arising from the ownership, maintenance, or use of a motor vehicle. *See* MICH. COMP. LAWS § 500.3101, *et seq.*; *see also McCormick v. Carrier*, 487 Mich. 180, 189-91 (2010) (providing an overview of Michigan's "no-fault insurance act"). Under this statutory scheme, "insureds may recover directly from their insurers, without regard to fault, for qualifying economic losses arising from motor vehicle incidents." *McCormick*, 487 Mich. at 189 (citing MICH. COMP. LAWS §§ 500.3101, 500.3105). The statute limits tort liability for non-economic losses to those that result

from "death, serious impairment of body function, or permanent serious disfigurement." MICH. COMP. LAWS § 500.3135(1).

The issues in this case are whether the injury to plaintiff's chest resulted in a "serious impairment of body function," and whether his chest scars constitute a "permanent serious disfigurement." This opinion will address each in turn.

## I.   Plaintiff's Chest Injury Did Not Result In "Serious Impairment Of Body Function."

In *McCormick*, the Michigan Supreme Court established the framework for determining whether plaintiff's chest injury resulted in a "serious impairment of body function." As a threshold matter, "the court should determine whether there is a factual dispute regarding the nature and the extent of the person's injuries, and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met." *Id*. at 215 (citing MICH. COMP. LAWS § 500.3135(2)(a)(i), (ii)). If there is no material factual dispute, then "whether the threshold is met is a question of law for the court." *Id*.

Assuming the Court may decide the issue as a matter of law, it must evaluate whether the "serious impairment" threshold has been crossed using a three-pronged test: "(1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live

in his or her normal manner of living)." *Id.* This analysis is inherently "fact- and circumstance-specific and must be conducted on a case-by-case basis." *Id.*[2]

To the extent there are disputes of fact in this case, they are not material for purposes of determining whether plaintiff's chest injury resulted in a serious impairment of body function. Accordingly, the issue may appropriately be resolved by way of summary judgment.

Plaintiff contends that, as a result of the July 16, 2011, accident, he sustained an injury to his chest that has resulted in the formation of two keloid scars that cause him "great chest pain" when engaged in "pushing, pulling and lifting." (Pltf. Brief at 14, Dkt. 68, Page ID 675).[3] Plaintiff's own testimony linked the pain to the Kenalog injections, not to the scars themselves, and he acknowledged that the pain lasts only a "couple weeks." (Krause Dep. at 49, Page ID 540). Plaintiff has chosen not to receive a Kenalog injection since May 22, 2013. (Williford Dep. at 47-48, Page ID 604; Dkt. 66-5, Page ID627). He acknowledges that, other than the temporary pain and tenderness

---

[2]Defendant correctly notes that plaintiff must establish that the July 16, 2011, accident was both the actual and proximate cause of his alleged impairment, but it appears to take no position on these issues. (Def. Brief at 18-19, Page ID 522-23). Because the Court finds that plaintiff has failed to meet his burden of production on the issue of serious impairment of body function, it need not address the issues relating to causation.

[3]Plaintiff's contention that, "[w]henever his scars are bumped by another person or object, his chest will hurt for weeks afterwards" (Plf. Brief at 6, Dkt. 68, Page ID 667), greatly overstates the record. Plaintiff's sole source for this assertion is the testimony of his mother, who described one instance in which plaintiff felt pain for weeks after his sister hit him in the chest. (Dkt. 68-8, Page ID 733).

following the Kenalog injections, there are no restrictions in his life activities as a result of the accident.  (*Id.* at 68, 77, Page ID 544-45).

Plaintiff's description of the temporary pain and tenderness following his Kenalog injections falls short of establishing a "serious impairment of body function" as a matter of law.  Plaintiff has failed to meet his burden of production, at least as to the objective manifestation of his purported impairment and it's affect on his ability to lead his normal life.

In analyzing the "objectively manifested" prong, "the proper inquiry is whether the *impairment* is objectively manifested, not the *injury* or its symptoms." *McCormick*, 487 Mich. at 197 (emphasis in original).  In other words, it is the effect of the wound, not the wound itself.  To be "objectively manifested," the effect on the functioning of the body must be "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id.* at 196. The serious impairment threshold cannot be satisfied by pain and suffering alone.  *Id.* at 197.  Rather, there must be a physical basis to support the subjective complaints of pain and suffering, which generally requires medical testimony. *McCormick*, 487 Mich. at 198.

Plaintiff's contention regarding pain and tenderness is linked solely to the treatment to reduce the scarring that resulted from his injury, not to the injury itself. Much less is there medical evidence of an objectively manifested impairment.

Plaintiff's sole source of medical evidence comes from his treating physician's assistant, Jennifer Williford.  She testified that, in her thirteen years of dermatological

practice, she knew of no patient who experienced continuing pain or tenderness after a Kenalog injection.  Even plaintiff never made such a report to her.  (Williford Dep. at 5, 20-21, Dkt. 66-4, Page ID 596, 599-600).  Moreover, Ms. Williford testified that she knows of no physiological reason for continuing pain or tenderness following Kenalog injections, (*id.* at 20, Page ID 599), and that there is no medical basis for concluding that the injections would affect plaintiff's ability to work or engage in any life activities.  (*Id.* at 50, Page ID 605).  Ms. Williford placed no restrictions on plaintiff's activities of daily living.  (*Id.*).  All that is left, then, is plaintiff's subjective claims of pain and suffering, which, as a matter of law, does not meet the threshold of an objectively manifested impairment.  *See McCormick*, 487 Mich. at 198.

Plaintiff's assertions regarding his ability to lead a normal life also fail. Plaintiff's claim that he was unable to participate in gym class or the school's football team as a result of the scars on his chest is speculative.  He simply asserts that he did not try to engage in these activities because throwing a ball and lifting things "would pull on the scar." (Krause Dep. at 42-43, Dkt. 65-1, Page ID 538).  Plaintiff's mother cited two reasons for plaintiff not wanting to play sports:  self-consciousness over his scars and a fear of being hit in the chest.  (Kerry Krause Dep. at 43, Dkt. 68-8, Page ID 733).  Plaintiff offers no evidence that he was unable to engage in these activities. To the contrary, he did engage in athletic activities following his accident, including swimming, running track, and competing in shot-put.  (Krause Dep. at 6-7, 91-94, Dkt. 65-1, Page ID 531, 547-49).

-11-

Furthermore, plaintiff does not claim to be unable to lift or bend, but rather, that he experiences some temporary pain following Kenalog injections. Plaintiff acknowledged that he experiences no restrictions in his life as a result of the accident, and he conceded that the only change the scars have made to his lifestyle is that he now feels the need to wear clothing to cover them. There is nothing in the legislative history of Michigan's no-fault insurance act, nor in the case law interpreting it, to suggest that plaintiff's perceived need to wear a shirt constitutes a sufficient change in his "normal life" to warrant the award of non-economic damages.

## II. Plaintiff's Chest Scars Do Not Constitute A "Permanent Serious Disfigurement."

Plaintiff contends that the two scars on his chest constitute "permanent serious disfigurement." There is no material dispute concerning the nature and extent of these scars. They are each approximately the size of a dime. (Krause Dep. at 40, Dkt. 65-1, Page ID 537). As of May 22, 2013, the last date for which plaintiff has medical records, the scars were flat. Given the lack of material dispute, the question of whether plaintiff's scars constitute permanent serious disfigurement is one of law for the Court to decide. *Fisher v. Blankenship*, 286 Mich. App. 54, 65 (2009) (citing MICH. COMP. LAWS § 500.3135(2)(a)).

Michigan courts have explained that "a disfigurement is something that mars, deforms, or defaces the person's appearance." *Id.* at 66. "[T]he disfigurement is permanent if it will exist perpetually or is otherwise 'long-lasting,' and will be considered serious if it is 'significant' or 'not trifling.'" *Id.* (quoting MICH. COMP. LAWS

§ 500.3135(1)).[4]  In determining whether the plaintiff has met the disfigurement threshold, the courts "must objectively examine the physical characteristics of the injury on a case-by-case basis and determine whether, in light of common knowledge and experience and considering the full spectrum of the injured person's life activities, the injury's physical characteristics significantly mar or deform the injured person's overall appearance." *Id.* at 67.

The Court has considered all the evidence, including a photograph plaintiff submitted depicting the scars after the Kenalog treatments were concluded. (Dkt. 68-9, Page ID 735).[5]  Plaintiff cannot establish that his scars constitute serious disfigurement.  Michigan courts have repeatedly held that scars more significant and more visible than plaintiff's did not meet the threshold. *See Nelson v. Myers*, 146 Mich. App. 444, 446 & n.1 (1985) (a scar of some three centimeters under plaintiff's eye with some skin discoloration); *Dybas v. Madziar*, No. 295512, 2011 WL 1327868, at *3 (Mich. Ct. App. Apr. 7, 2011) (two knee scars "less than 3-1/2 inches in length . . . [with] some discoloration . . . partially covered by hair"); *Ivezaj v. Simon*, No. 287152, 2009 WL 3199519, at *2-3 (Mich. Ct. App. Oct. 6, 2009) (a hairline scar not visible on

---

[4]Defendant concedes that plaintiff's scars are permanent.  (Def. Brief at 14, Dkt. 65, Page ID 518).

[5]Of the five photographs plaintiff filed with the Court, four were taken soon after the accident (*see* Plf. Brief at 6, Dkt. 68, Page ID 667), presumably before the Kenalog treatments.  The only one of these photographs purportedly taken after completion of the treatments is the one contained within an email dated May 5, 2014 (Page ID 735).  While there is some question about the authenticity of that photograph, or at least its date (*see* Def. Reply Brief at 6, Dkt. 70, Page ID 746), the Court has considered it, giving plaintiff the benefit of the doubt.

plaintiff's face); *Kyllonen v. Luepnitz*, No. 288659, 2009 WL 3199501, at *2 (Mich. Ct. App. Oct. 6, 2009) ("a bump between the neck and left shoulder . . . [with] slight discoloration of skin where the surgical scar appears to be"); *Ashcraft v. McLaughlin*, No. 266116, 2006 WL 1084426, at *2 (Mich. Ct. App. Apr. 25, 2006) (a "noticeable" scar approximately 2-3/4 inches long on plaintiff's hip area); *see also Minter v. City of Grand Rapids*, 275 Mich. App. 220, 243 (2007) (Murray, J., dissenting) (Trial court did not err in finding that "a 13 millimeter scar above plaintiff's eyebrow that is only slightly lighter in color than plaintiff's skin tone" did not constitute a "permanent serious disfigurement.), *dissenting opinion adopted in* 480 Mich. 1182 (2008).

The seriousness of plaintiff's disfigurement must be assessed within the context of other scars and markings on his body.  *See, e.g., Johnson v. Reliant Ins. Co.*, No. 251562, 2005 WL 602562, at *2 (Mich. Ct. App. Mar. 15, 2005).  In *Johnson*, the plaintiff had a surgical scar 4½ inches long on his neck.  *Id.*  The court noted that, "[w]hile plaintiff's surgical scar might ruin the career of a young jewelry model, the record reflects that plaintiff wears many scars as a consequence of his long life in a tough city."  *Id.*  The court concluded that "[i]n contrast to these disfigurements, the scar on the back of [plaintiff's] neck is not particularly disturbing or egregious."  *Id.*

In this case, plaintiff has scars larger and more prominent than the ones at issue here.  He has a scar on the back of his left hand approximately 1½ inches long. (Krause Dep. at 11, 84, Dkt. 65-1, Page ID 532, 546).  He also has a scar on his knee the size of a half-dollar coin.  (*Id.* at 98, Page ID 549).  These scars further undermine the seriousness of two dime-sized scars on plaintiff's chest.

Plaintiff's reliance on his own self-consciousness concerning the scars, including his reluctance to go shirtless (*see* Plf. Brief at 12, Page ID 673), is misplaced. The injured person's subjective experience is irrelevant to the inquiry as to whether there is a serious disfigurement. Rather, it is the viewer's objective judgment of the alleged disfigurement that matters. *See Fisher*, 286 Mich. App. at 65-67; *see also Nelson v. Myers*, 146 Mich. App. 444, 445-47 (1985).

## <u>Conclusion</u>

For the reasons set forth herein, the United States' motion for summary judgment (Dkt. 64) will be granted. A judgment consistent with this opinion will issue.

Date: April 13, 2015

    /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge